## CUNNINGHAM v. TOYE.

Opinion delivered February 13, 1911.

1.  APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—Unless there is a clear preponderance of the evidence against the findings of fact made by the chancellor, they will be sustained on appeal. (Page 540.)

2.  BILLS AND NOTES—BONA FIDE PURCHASER.—One who purchases a note with notice that his assignor is under obligation to make title to certain land when a series of notes for the purchase money is paid takes subject to such obligation. (Page 540.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellee bought of L. A. Dunn lot 4, block 1, Ferndale Addition to Little Rock, under a contract of sale which provided that appellee should pay for the lot the sum of $550, of which $50 was to be paid in cash and the balance in fifty notes of $10 each, payable monthly with 8 per cent. interest. Upon payment of the purchase money Dunn agreed to convey the lot "by a good and sufficient deed."

The several notes were in form as follows:

"$10.00.            Little Rock, Ark., January 29, 1908.

"On or before sixty days after date I promise to pay to the order of Luther Dunn, at his office in Little Rock, Ark., the sum of ten dollars, with interest at the rate of 8 per cent. per annum from date until paid, all of said interest payable (at) maturity, being one of the deferred payments for the following described property, towit: lot 4, block 1, Ferndale Addition. This note is a lien on the property above mentioned.

"No. 1.   Due 2-29-1908.

(Signed)                        "Mrs. Mary T. Toye."

Immediately after the sale of the lot, about February 1, 1908, Dunn sold the entire series of Toye notes to appellant. The consideration was an automobile and a graphophone. Dunn had purchased the lot from Ratterree & Son for the sum of $400, paying the sum of $50 in cash, and executing his notes in sums of $10 each, payable monthly, for the balance. At the time he contracted to sell the lot to appellee he owed twenty-two or twenty-three of the monthly notes. He had paid on the lot the sum of $170.

It was understood between appellee and Dunn, at the time of the sale of the lot by him to her, that he would pay his notes for the lot every month and turn them over to her before she· paid her notes to him. Ratteree, the owner of the lot, sold the notes Dunn had executed to him to Ben Cox. The appellee continued to pay the notes executed by her until she had paid the sum of $190, leaving notes to the amount of $360 unpaid. She ceased to pay in May, 1909, because Dunn was not paying his notes according to contract.

She brought this suit, alleging substantially the above facts, and that appellant purchased her notes from Dunn with full knowledge of the fact that Dunn had not paid his notes to Ratterree, and with full knowledge of the incumbrance upon the lot. She made appellant, Dunn, Ratterree and Cox defendants. She alleged full compliance with her contract to date, and offered to pay the balance of $360. She prayed "that a decree be entered in favor of the plaintiff, specifically enforcing the agreement made by said L. A. Dunn with plaintiff, and that all title, legal and equitable, to said lot be divested out of the defendants, each of them, and invested in this plaintiff, and for all other

and such further relief as may seem proper to this court."

Appellant answered, alleging that he purchased the notes for a valuable consideration without notice and before maturity, and denied that he purchased with knowledge of any incumbrance upon the lot. He prayed that, if specific performance be granted, no decree be entered impairing in any manner his lien on the lot, and for all proper relief.

Ratterree answered, alleging that the sum of $200.26 was still due on the purchase money, and that he was ready to execute warranty deed when same was paid.

Cox answered that he held notes executed by Dunn to Ratterree, that the amount unpaid was $200.26, including interest.

The court, after hearing the evidence, entered the following decree: "That the plaintiff, Mary Toye, pay into the registry of the court the sum of $360, the balance due on said property; that out of this amount the sum of $200.26 and interest be paid to Ben Cox upon his canceling and surrendering the notes held by him; that the balance of the $360 be, after all the costs of this action are paid, turned over to J. C. Cunningham, and the said J. C. Cunningham is hereby ordered to cancel and deliver to Mary Toye all of the notes against her held by the said J. C. Cunningham; and it is further ordered, adjudged and decreed that the said J. R. Ratterree make and deliver to the said Mary Toye a good and sufficient deed to lot four (4), in block one (1), of Ferndale Addition to the city of Little Rock, Ark.; that defendant J. C. Cunningham pay all costs of this action, for which execution may issue as upon a judgment at law."

The defendant Cunningham duly prosecutes this appeal.

*J. B. Webster,* for appellant.

Appellant took the notes before maturity for a valuable consideration and without notice. Not only the evidence but the presumption of law is in his favor. 96 U. S. 314; 83 U. S. 149; 107 U. S. 149; *Id.* 542.

*Ben D. Brickhouse,* for appellee.

This court will not reverse the finding of facts by a chancellor, unless that finding is contrary to the clear preponderance of the evidence. 90 Ark. 426; 68 Ark. 134; 73 Ark. 489. Neither will it reverse where the testimony is evenly balanced. 77 Ark. 305.

2. The facts detailed in evidence clearly show that appellant purchased the notes with notice of the equities in the case. This notice was deducible from the face of the notes themselves. 90 Ark. 97; 4 Am. & Eng. Enc. of L. 306; *Id.* 304; 123 Mass. 60.

WOOD, J., (after stating the facts). The only question necessary to decide is whether or not appellant was an innocent purchaser for value. Appellant testified that he purchased the notes in the ordinary course of business, giving in payment therefor an automobile worth five or six hundred dollars, that at the date of the purchase he knew nothing about Dunn's outstanding notes for the purchase of the lot from Ratterree. He further testified that Dunn offered to sell him the lot before he sold same to Mrs. Toye, but that he wanted something on which he could realize immediately. He considered the automobile as good as the lot. Dunn, on the other hand, testified that he told appellant at the time the notes were assigned to him that he still owed his notes on the purchase price. He further testified that the automobile that he received in payment for the notes was worth from $125 to $200; that he could not sell it for $200. It was merely a question of fact as to whether appellant purchased the notes from Dunn without notice of the equities between Dunn and appellee. Unless there is a clear preponderance of the evidence against the findings of the chancellor, this court will not set them aside. *Hinkle* v. *Broadwater*, 73 Ark. 489; *Brown* v. *Wyandotte & Southeastern Ry. Co.*, 68 Ark. 134; *Farmer v. First National Bank*, 89 Ark. 132.

The testimony seems to be evenly balanced. In such case the finding of the chancellor must be sustained. *Litchworth* v. *Vaughan*, 77 Ark. 305. The preponderance must be against the finding of facts by the chancellor, or else such finding must be upheld. *Norman* v. *Pugh*, 75 Ark. 52; *J. H. McGill Lumber Co.* v. *Lane-White Lumber Co.*, 90 Ark. 426. See also *Goerke* v. *Rodgers*, 75 Ark. 72. The chancellor therefore did not err in holding that appellee was not an innocent purchaser.

It is suggested that appellant should be believed in preference to Dunn because Dunn is seeking to shift his legal liabilities on appellant. But Dunn was under the same liability after he gave his testimony as he was before. His testimony did not tend to relieve him of any liability. He was still liable for the unpaid

purchase money notes he had executed. Taking the testimony of Dunn as true, as the chancellor found, then appellant knew when he purchased the notes from Dunn that the latter was under obligation to pay off the notes he had given in order to get a title himself, and that he was bound to make appellee a title. He took the assignment of the notes for the purchase money knowing that the assignor and payee was under obligation to make title to the lot when the notes were paid. As assignee with notice, he took the notes burdened with this obligation, and had to fulfill it before he could collect the notes. See *Smith* v. *Henry,* 7 Ark. 207; *Sorrells* v. *McHenry,* 38 Ark. 133. This was in effect the chancellor's decree.

No affirmative relief is asked by appellant against Dunn.

The decree is affirmed.