PAGE *v.* PAGE.

4-7944                                      196 S. W. 2d 580

Opinion delivered October 7, 1946.

*Hays, Wait & Williams,* for appellant.

*Bob Bailey* and *Bob Bailey, Jr.,* for appellee.

Robins, J.  This appeal presents a controversy between appellant, Elmer Page, and his divorced wife, appellee Sinda Page, as to the custody of three of their children, to-wit: Harvey Eugene Page, a son twelve years of age, Juanita Page, a daughter ten years of age, and Joyce Page, a daughter seven years of age.

Appellant brought suit against appellee for divorce, alleging separation for more than three years, and asking custody of said children. In her answer appellee denied the grounds of divorce alleged by appellant and also prayed for custody of the children.

The lower court granted appellant a divorce, but permitted appellee to retain the children, and ordered appellant to pay to her for their support the sum of $25 per month.

Appellee has not appealed from the provisions of the decree by which appellant was granted a divorce, but appellant has appealed from that portion thereof by which custody of the children was awarded to appellee.

The parties to this litigation were married in 1920, and at the time of the trial had seven living children, four of whom were older than the children whose custody is involved herein. Appellant and appellee separated in 1940. Appellant kept the children from the time of the separation until July 24, 1944, on which date his dwelling house was destroyed by fire and appellant sustained severe burns while rescuing his youngest child. By reason of these burns he was confined to a hospital for almost five months. When appellant was taken to the hospital the children were for a time cared for in the homes of other relatives, and then appellee carried them to her home, where they have since remained. After appellant had recovered from his injury and had established a new home he sought to obtain his children, but appellee refused to give them up. Thereupon this suit was instituted.

The rule to be followed by courts in awarding custody of minor children is thus stated in headnote 6, *Oliphant* v. *Oliphant*, 177 Ark. 613, 7 S. W. 2d 783: "The custody of a child is not awarded for the purpose of gratifying the feelings of either parent, or with the idea of punishing or rewarding either, but, under the statute as well as from considerations of equity, for the best interests of the child." To the same effect see *Miller* v. *Miller,* 189 S. W. 2d 371. By § 6205 of Pope's Digest it is provided: "Where the husband and wife are living apart, there may be an adjudication of the court as to their power, rights and duties with respect to the persons and property or their unmarried minor children. In such cases there shall be no preference between the husband and wife, but the welfare of the child must be considered first in determining the custody of such child, or the control of its property."

In the trial below each party offered testimony tending seriously to impugn the character of the other. No useful purpose would be served by a rehearsal of the recriminations made against the other by each of these parties. The chancellor had the parties, the children whose custody was involved, and the witnesses on both sides before him and had the benefit of observing the appearance and demeanor of all of them. His decision was doubtless influenced by these factors in the situations which were shown by undisputed evidence:

First. These children, at the time of the trial, had for eighteen months been in the home of appellee, and the chancellor probably recognized the harmful effect to young children, as was pointed out by us in the case of *French* v. *Graves,* 205 Ark. 409, 168 S. W. 2d 1108, of frequent changes in their surroundings and environment. Of course this one factor should never be permitted to control a decision in a case of this kind where the evidence clearly shows that a change in custody of the children is required, but it is always to be considered and may be entitled to controlling weight, where from the evidence there is doubt as to what order should be made.

Second. .The evidence indicated that the children preferred to remain with their mother. This preference, too, while not controlling, should always be taken into account. *Vilas* v. *Vilas,* 184 Ark. 352, 42 S. W. 2d 379.

Third. The appellee had not only been taking care of these children, but had also opened her home to three orphan children—one of them affected with infantile paralysis—of the deceased daughter of appellant and appellee. The father of these children had apparently deserted them and was contributing nothing to their support. The evidence showed that it was only by a valiant struggle, involving the doing of the hardest kind of manual labor, that appellee had been enabled to support all these little children. The fact that this woman, already beset by dire poverty, had voluntarily taken upon herself the heavy burden of providing food, shelter and clothing for her orphaned grandchildren may have led the lower court to conclude that the custody of the children involved herein might safely be entrusted to appellee.

After a careful review of the record we cannot say that the decree of the lower court is against the weight of the testimony. Therefore, under our long established rule, it must be affirmed. *Hinkle* v. *Broadwater,* 73 Ark. 489, 84 S. W. 510; *Whitehead* v *.Henderson,* 67 Ark. 200, 56 S. W. 1065; *Norman* v. *Pugh,* 75 Ark. 52, 86 S. W. 833; *Cunningham* v. *Toye,* 97 Ark. 537, 134 S. W. 962; *Cotton* v. *Citizens Bank,* 97 Ark. 568, 135 S. W. 340; *England* v. *Scott,* 205 Ark. 47, 166 S. W. 2d 1014.