
# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 4, 2017 Session[1]

## STEVEN J. THOMAS, ET AL. v. JEFFREY M. THOMAS, ET AL. v. DELMUS L. THOMAS, ET AL.

### Appeal from the Chancery Court for Crockett County
### No. C-9383   George R. Ellis, Chancellor

_____

### No. W2016-01412-COA-R3-CV

_____

This appeal concerns the proper ownership of a piece of farm property in which the deed recites ownership as one-half to parents and one-fourth each to their two sons. The trial court eventually ruled that the property in dispute was solely owned by parents based on the complaining son's nonpayment of taxes and awarded full ownership of the property to the parents under the theories of title by prescription and unjust enrichment. We reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and Remanded**

J. STEVEN STAFFORD, P. J.,W.S., delivered the opinion of the court, in which BRANDON O. GIBSON, J. and W. MICHAEL MALOAN, SP.J., joined.

Donnie W. Knott, Milan, Tennessee, for the appellant, Steven J. Thomas.

Phillip G. Hollis, Camden, Tennessee, for the appellees, Delmus L. Thomas, and Emily Faye Thomas.

### MEMORANDUM OPINION[2]

_____

[1] Oral Argument in this case was heard at the University of Tennessee at Martin.

[2] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

BACKGROUND

On June 23, 2010, Plaintiff/Appellant Steven J. Thomas ("Steven")[3] and his wife filed a petition in the Crockett County Chancery Court for a partition by sale of four farms jointly owned with his younger brother, Defendant Jeffrey M. Thomas ("Jeffrey," together with Steven, "Sons")[4] and Jeffrey's wife.[5] On August 10, 2010, Jeffrey filed an answer, counter-claim, and third-party complaint, seeking the partition of eight additional farms and therefore bringing into the case as third party defendants Sons' parents, Defendants/Appellees Delmus L. Thomas ("Father") and Emily Faye Thomas ("Mother," or, together with Father, "Parents"). Only one of the eight farms, referred to as the "McLemoresville farm," ("the property") is directly at issue on this appeal. The deed to this property reflects that Parents own a one-half interest, Steven owns a one-fourth interest, and Jeffrey owns a one-fourth interest in the property.[6] On October 20, 2010, Parents filed a pro se response alleging that the property was conveyed to the Sons solely for inheritance tax purposes and denying that Parents should be forced to sell their property.

Over four years later, on December 5, 2014,[7] Parents, through counsel, filed an answer and counter-complaint, alleging several causes of action. Parents sought exclusive ownership of the property either through a declaration of resulting trust, constructive trust, or reformation of the deed. Parents also argued that they are presumed to be the sole legal owners of the property based on their payment of property taxes for more than twenty years before the action was filed in 2010 pursuant to Tennessee Code Annotated sections 28-2-109 and 28-2-110. On December 30, 2014, Steven filed a response, denying the material allegations contained in Parents' pleading, and a motion for a more definite statement. Several contentious filings followed, but ultimately, on January 11, 2016, a consent order was entered, with the parties agreeing to the following stipulated facts:

---

[3] We mean no disrespect by calling the Thomas Sons by their first names, but because they share the same last name, we have decided that this is the clearest way to refer to each son.

[4] This original petition was filed against "Jeffrey M. Thomas, aka Jeffery M. Thomas and Jeffery Martin Thomas." Because the various pleadings in the record contain both spellings of Jeffrey's name, and we are unsure of the true spelling, we will, for consistency's sake, refer to him as "Jeffrey" in this Opinion.

[5] These four farms at issue in the original petition were owned exclusively by Steven and his wife and Jeffrey and his wife.

[6] Because neither Steven's wife nor Jeffrey's wife own an interest in the property, the two wives were subsequently dismissed from any dispute pertaining to the property by order of March 24, 2015.

[7] According to Steven's brief, a motion to quash the answer was excluded from the record, but the motion was subsequently denied. Accordingly, parents also filed an amended answer and counterclaims on December 22, 2014.

The [property] was deeded to Delmus Lee Thomas and wife, Emily Faye Thomas and Steven Joe Thomas in December 1976. This original deed by its acceptance had the buyers assume an existing debt to Federal Land Bank, but none of the buyers signed any separate assumption document. A loan was obtained from PCA and secured by the [property] and another piece of land owned by [Parents]. The deed of trust to PCA was signed by all three owners of record. This deed was prepared in accordance with the instructions of [Parents].

That at the time of purchase of the [property], both [Sons] were residing in the home with their Parents and being supported by them.

At or about the time that Jeff[rey] . . . became an adult, [Parents] and Steven executed a Warranty deed [on January 19, 1979] that stated [Parents] would own a one-half (1/2) interest as tenants by the entirety and [Sons] would each own a one-fourth (1/4) interest in the property.

In 1980, the loans were refinanced with Federal LandBank. All four (4) owners of record signed the deed of trust, but only Mr. and Mrs. Thomas signed the note to FLB. The refinance paid off the assumed FLB debt and the PCA debt done at the time of purchase.

In 1992 and in 2000, small pieces of the [property] were sold to the State of Tennessee-Department of Transportation. All four (4) parties signed both deeds.

The parties all farmed together in a harmonious relationship the properties owned by them from 1980 until 1998 when [Parents] retired from active farming. After the retirement of [Father], [Sons] farmed together and while they farmed together, [t]hey paid [Parents] rent based on a share of the crop proceeds. Since 2006, Jeffrey has farmed the [property] and paid rent to [Parents] in the same way. The rent he paid in 2014 was $25,000.00.

Since the property was first acquired, [Parents] have paid all taxes, expenses and costs and have received and kept all revenues and monies from the [property]. [Sons] never paid any of the property taxes on the [property]. No party, or combination of parties, had ever commenced a court proceeding as to any matter or issue until the filing of this partition case in Crockett Chancery Court.

The first mention or talk that [Sons] did not own any interest in the [property] came in 2010 at or about the time that Jeff[rey] . . . filed his Petition for Partition asking for the Partition of the [property]. [Parents] have stated that they would have never thought that [Sons'] name[s] would

have needed to come off of the deed to the [property] until 2010 when the Partition suit was filed.

[Parents] had a quitclaim deed prepared in 2010 to have [Sons] convey all interest they had in the [property] to [Parents]. Jeff[rey] . . . has signed his interest over to [Parents] but the deed has never been delivered or recorded.

All deeds, deeds of trust and other documents of record in the Register's Office of Carroll County, Tennessee are agreed to as being the same as if certified copies were filed.

Parents and Steven also filed trial briefs, and the case was submitted to the trial court for adjudication based on the record. Steven's trial brief, in particular, anticipatorily objected to any theories of ownership that Parents may raise in their trial brief that were not previously raised in the pleadings, such as title by prescription and unjust enrichment.[8] Parents later filed their trial brief, indeed raising these anticipated theories.

On June 17, 2016, the trial court entered an order finding that Parents are the sole owners of the property based on prescription and unjust enrichment because they paid for all of the costs associated with ownership of the property for over two decades. On October 18, 2016, the trial court entered an amended order,[9] which also: (1) ruled on the disposition of the other seven farms in the original petition for partition, stating that because partition in kind was not feasible, the farms should be sold at an auction with the net proceeds divided among the parties; (2) clarified that the dispute involved ownership of the property and that all other claims had been withdrawn by voluntary dismissal; and (3) stayed the sale of the other seven farms until the ownership of the property is finally resolved. Steven appeals.[10]

## ISSUES

Steven raises the following issues for our review, which we have taken from his brief and slightly restated and reordered:

1. Whether the trial court erred in ruling that Tennessee Code Annotated section 28-2-110 barred any claim of either son to their record interest in the property.

---

[8] According to counsel for Steven, he learned of these anticipated theories through phone conversations with Parents' counsel.

[9] Because the original order entered by the trial court **only** adjudicated the issue of ownership of the property, by order of October 7, 2016, this Court directed Steven to obtain entry of a final judgment in the trial court, adjudicating all other claims for relief contained in the pleadings.

[10] Jeffrey did not file an appellate brief or otherwise participate in this appeal.

- 4 -

2. Whether the trial court erred in applying the theories of title by prescription and unjust enrichment to this case when these theories were not contained in any of the pleadings filed by any of the parties and these theories were never before the court and only appeared at the time the briefs were filed.

3. Whether the trial court erred in ruling that Parents had acquired title by prescription by meeting all elements to acquire title by prescription as stated in *Roberts v. Bailey*, 470 S.W.3d 32, 34 (Tenn. 2015).

4. Whether the trial court erred in ruling that Steven would be unduly enriched if allowed to retain his ownership interest in the property.

5. Whether the trial court erred in not finding that the Parents are estopped to deny the ownership of the property as stated in numerous deeds and deeds of trust executed by the Parents, Steven, and Jeffrey during the past thirty-five years.

## STANDARD OF REVIEW

Where, as here, the parties agreed to submit their case to the trial court for adjudication on the merits based only on the stipulated facts, this Court has articulated the applicable standard of review:

> [O]ur review is de novo on the record. Tenn. R. App. P. 13(d) (2004); *see also* **Conley v. Conley**, No. E2004-01309-COA-R3-CV, 2005 WL 1111203, at *5 (Tenn. Ct. App. May 9, 2005) (citing **Cho v. Jeong**, No. 03A01-9806-CV-00257, 1997 WL 306017, at *4 (Tenn. Ct. App. June 6, 1997)). The trial court's findings of fact are accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). However, the trial court's conclusions of law carry no such presumption. **Bowden v. Ward**, 275 S.W.3d 913, 916 (Tenn.2000).

*Mendelson v. Bornblum*, No. W2004-02549-COA-R3-CV, 2005 WL 1606068, at *4 (Tenn. Ct. App. July 8, 2005).

## DISCUSSION

We first address whether Tennessee Code Annotated section 28-2-110 bars Steven from claiming any interest in the property. Tennessee Code Annotated section 28-2-110 provides, in relevant part:

> (a) Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such

person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

Although this section "bars an action from being brought if taxes have not been paid for more than twenty years[,]" this section does not "prevent[] defendants from defending their title." *Layne v. Baggenstoss*, 640 S.W.2d 1, 3 (Tenn. Ct. App. 1982). "The failure to pay taxes for twenty years does not automatically cause defendants to be ejected." *Id.*

According to the Tennessee Supreme Court:

[T]his statute does not bar a suit by one tenant in common against another tenant in common who has paid such taxes unless the plaintiff has been disseised or ousted by the defendant. *See Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695 (1956); *Memphis Hous[.] Auth[.] v. Mahoney*, 50 Tenn. App. 117, 359 S.W.2d 851 ([Tenn. Ct. App.] 1962). Without such disseisin or ouster, the payment of taxes by the defendant tenant in common would inure to the benefit of the plaintiff tenant in common, thereby preventing the bar of the statute.

*Phillips v. Pittsburgh Consol. Coal Co.*, 541 S.W.2d 411, 413 (Tenn. 1976). Here, although it is undisputed that Steven never paid taxes on the property, the statute does not prevent Steven defending his title once Parents asserted that they were entitled to full ownership of the property, nor does it prevent Steven from suing Parents for partition of the property absent evidence of an ouster. Indeed, the undisputed facts show that the parties farmed together harmoniously until the filing of the partition suit. Absent any evidence of an ouster, Parents' payment of taxes "inure[d] to the benefit of [Steven, a] tenant in common" and rendered section 28-2-110 inapplicable as a result. As such, we hold that the trial court erred in concluding that Tennessee Code Annotated section 28-2-110 barred Steven from asserting his claim to the property.

Having determined that Tennessee Code Annotated section 28-2-110 does not bar Steven from claiming an interest in the property, we next address whether the trial court erred in granting Parents full ownership of the property based on the theories of title by prescription and unjust enrichment. As an initial matter, Steven first argues that these issues are not properly before this Court because Parents failed to properly plead these claims or theories of recovery. We need not decide this issue, however, because we conclude that Parents are not entitled to full ownership of the property under either theory of recovery based on the undisputed facts.

With respect to the theory of title by prescription, the Tennessee Supreme Court has provided the following required elements that a claimant must prove in order to raise a presumption of title in his or her favor:

(a) The prescriptive holder must have been in exclusive and uninterrupted possession of the land for a period of twenty years or more, claiming the land as his own without any accounting to his cotenants[;]

(b) The prescriptive holder's cotenants must have been under no disability to assert their rights during the prescriptive period of twenty years[; and]

(c) The prescriptive holder's occupancy must have been without the permission, actual or implied, of the other cotenants.

*Roberts v. Bailey*, 470 S.W.3d 32, 39 (Tenn. 2015) (quoting *England v. England*, No. E2011-02094-COA-R3-CV, 2012 WL 4503434, at *5–6 (Tenn. Ct. App. Oct. 2, 2012)). Once a presumption of title has arisen, the other party may then rebut the presumption. *Id.* "[O]ccupation of property by one cotenant is not generally regarded as adverse to the claim of another cotenant." *England*, 2012 WL 4503434, at *6 (citing *NeSmith v. Alsup*, No. 01A01-9809-CH00509, 1999 WL 557620, at *4 (Tenn. Ct. App. Aug. 2, 1999)). "Additionally, because possession by a tenant in common is regarded as possession by himself and all the other cotenants, the possession of one tenant in common is not ordinarily held to be exclusive." *Id.* (citing *Howell v. Howell*, No. 01A01-9806-CV-00301, 1999 WL 536261, at *9 (Tenn. Ct. App. July 27, 1999)).

In this case, despite acknowledging in its order that Steven and Jeffrey "used equipment that they owned with [Parents] to clear, ditch[,] and terrace [the property] and ma[de] it a productive farm over a period of [thirty] years[,]" the trial court inexplicably found that "[t]he possession . . . by [Parents] is undisputed" and thereby satisfied the first element of a title by prescription claim. In so finding, the trial court reasoned that Parents' payments of "all the costs of purchase, interest on loans, expenses for all improvements[,] and property taxes for thirty-nine . . . years" entitled them to full ownership of the property. We hold that this is in error. In order for Parents to raise a presumption of title by prescription in their favor, Parents must establish that they possessed the land and used it to the exclusion of Steven and Jeffrey for at least twenty years, not that Parents paid for all of the costs associated with ownership of the property. *See Roberts*, 470 S.W.3d at 39 (describing the required elements); *Morgan v. Dillard*, 61 Tenn. App. 519, 525, 456 S.W.2d 359, 362 (Tenn. Ct. App. 1970) (quoting *Cannon v. Phillips*, 34 Tenn. 211, 214 (Tenn. 1854)) ("The doctrine of presumption of title rests upon the simple fact of long-continued use and enjoyment, and requires no aid from 'color of title.' . . . The presumption . . . rests alone upon a principle of public policy, to quiet the title of those who can show no other title than long-continued possession and use."). Regardless, nothing in the record supports Parents' assertion that the prescriptive period began on January 19, 1979, the date Jeffrey was added to the deed, until August

10, 2010, the date Parents were brought into the dispute.[11]  Indeed, the stipulation of facts indicate that "[t]he parties all farmed together in a harmonious relationship the properties owned by them from 1980 until 1998 when [Parents] retired from active farming" and that Steven and Jeffrey continued to "farm[] together and . . . paid [Parents] rent based on a share of the crop proceeds." Rather than exclusive use, it appears that the parties farmed the property together as co-tenants.  Nothing in the record therefore supports deviating from the general rule that a co-tenant in possession may not assert that he or she is holding the property adversely or exclusively as against other non-possessing co-tenants, without more. *See England*, 2012 WL 4503434, at \*6.  Based on the undisputed facts and the lack of any evidentiary support for the trial court's findings in the record,[12] we must reverse the trial court's grant of full ownership to Parents based on the theory of title by prescription.[13]

We likewise agree with Steven's argument that Parents cannot now assert an equitable claim of unjust enrichment claim because Parents' payments for the property and titling of the interest in Steven's and Jeffrey's names over thirty years ago constituted

---

[11] We took these dates from Parents' appellate brief. Although the trial court found title by prescription in favor of Parents, the trial court's final order does not address when the prescriptive period allegedly began.

[12] Surprisingly, no Tennessee case has explicitly described the quantum of proof required for a title by prescription claim, although **Roberts** implicitly suggested that the standard is clear and convincing.  *See Roberts*, 470 S.W.3d at 40 ("[T]he first element of title by prescription has clearly been established in favor of the [defendants].").  It is well-settled that related theories of property ownership, such as adverse possession and easement by prescription, have traditionally required clear and convincing proof.  *See Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 377 (Tenn. 2007) (citing **O'Brien v. Waggoner**, 20 Tenn. App. 145, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936)) ("The burden of proof is on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing."); **Newman v. Woodard**, 288 S.W.3d 862, 868 (Tenn. Ct. App. 2008) (citing **Stone v. Brickey**, 70 S.W.3d 82, 86 (Tenn. Ct. App. 2001)) ("[A] party claiming a prescriptive easement must demonstrate the necessary elements by clear and convincing evidence."); *see also* **Brewer v. Brewer**, No. M2010-00768-COA-R3-CV, 2011 WL 532267, at \*3 (Tenn. Ct. App. Feb. 14, 2011) ("In order to establish an interest in property by gift, a party must prove by clear and convincing evidence that the donor intended to make a gift to the donee and that the donor delivered the property to the donee."). It would seem disingenuous to state that the quantum of proof for a claim under title by prescription is otherwise.  We need not address whether Parents' proof meets the clear and convincing standard, however, based on our determination that **no** proof supports the contention that Parents exclusively and uninterruptedly possessed and used the property for at least twenty years, let alone clear and convincing proof.

[13] Although not directly stipulated to by the parties, we note that the trial court also included in its order that Steven "had held a power of attorney from his [P]arents and [Jeffrey] allowing him to execute conservation plans to sign up in agricultural programs and execute other documents for this farm." It is unclear when Steven held this power of attorney.  Regardless, this conduct of allowing Steven to enter into contracts for the farm is also inconsistent with Parents' claim of title by prescription, because Parents are not "claiming the [property] as [their] own without any accounting to [their] cotenants[.]" **Roberts**, 470 S.W.3d at 39.

voluntary acts. The Tennessee Supreme Court has outlined the following requirements that a plaintiff must prove to prevail under a theory of unjust enrichment:

> The elements of an unjust enrichment claim are: 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Paschall's, Inc.* [*v. Dozier*], 407 S.W.2d [150,] 155 [(Tenn. 1966)].

*Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). Furthermore:

> The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, if the landowner has given **any consideration** to any person for the [alleged benefits], it would not be unjust for him to retain the benefit without paying the furnisher.

*Paschall's, Inc.*, 407 S.W.2d at 155 (emphasis added); *see also* *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 597 (Tenn. 1998) (holding that the unjust enrichment claim was properly dismissed because the defendants provided consideration for both the improvements and the property, and, therefore, it was not unjust for the defendants to retain this property with its improvements); *Venture Const. Co. v. Apple Music City, Inc.*, 847 S.W.2d 509, 511 (Tenn. Ct. App. 1992) (holding that lessor was not unjustly enriched when lessor furnished money to the lessee for payment of construction costs even though the lessee did not pay the construction company the amount it was due for the work). "It is well-settled that consideration exists when the promisee does something that it is under no legal obligation to do or refrains from doing something which it has a legal right to do." *Brown Oil Co. v. Johnson*, 689 S.W.2d 149, 151 (Tenn. 1985).

> As this Court has previously stated with respect to a claim for unjust enrichment:

> Quasi-contracts or contracts implied in law arise only where one party has been unjustly enriched at the expense of another, and under such circumstances the law implies a promise to make restitution to the extent of unjust enrichment.

> "The doctrine of unjust enrichment is founded upon the principle that someone 'receiving a benefit desired by him, under the circumstances rendering it inequitable to retain it without making compensation, must do so.'" *Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn. Ct. App. 1984); quoting *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 54, 407 S.W.2d 150, 154 (1966).

*Clayton v. Brisendine*, No. 5, 1990 WL 140910, at \*2 (Tenn. Ct. App. Oct. 1, 1990). "'There is no general rule that a recipient of a benefit must pay for the benefit conferred upon him by claimant irrespective of the circumstances.'" *Id.* (quoting *W.F. Holt Company v. A & E Electric Company, Inc.*, 665 S.W.2d 722, 738 (Tenn. Ct. App. 1983)). "Equity will not aid a volunteer. One who makes voluntary payments knowing all the facts, absent fraud or deceit, cannot subsequently sue to recover such payments even if they were paid without consideration and under no legal liability." *Id.* at \*3; *see also Roach v. Underwood*, 241 S.W.2d 498, 499 (Tenn. 1951) ("[T]he general rule is there can be no recovery [for one who makes a voluntary payment of money, knowing all the facts, and subsequently sues to recover it], even if there was no legal liability to pay in the first instance."); *Boyd v. Anderson*, 1 Tenn. 438, 444 (Tenn. Super. L. & Eq. 1809) ("[W]here money has been paid voluntarily and understandingly, without fraud, imposition or deceit, although it were paid without consideration, the law will not compel a payment, but leaves the parties as it finds them.").

Here, the stipulated facts show that the original 1976 deed to the property "was prepared in accordance with the instructions of" Parents. Although Parents paid for the taxes, expenses, and costs over the years, nothing in the record suggests that Parents ever sought reimbursement from either Steven or Jeffrey while the family "farmed together in a harmonious relationship," nor did Parents at any time allege that these actions were fraudulently or wrongfully induced by Steven. Indeed, Parents admitted in a pleading that they "put [Sons' names on the deed] for inheritance tax purposes[,] never dreaming what the future would hold." As such, these acts made by Parents of their own volition, with the intent of passing the property to Sons when they died, cannot now be the basis for an unjust enrichment claim.[14]

Based on our holding that the trial court erred in granting Parents full ownership of the property based on the theories of both title by prescription and unjust enrichment, all other issues raised on appeal are hereby pretermitted. Because Steven necessarily owns a one-fourth interest in the property and seeks partition by sale of the property, the trial court is directed, upon remand, to consider whether Steven is entitled to such partition.[15]

---

[14] Moreover, as co-tenants on the property, Parents were equally responsible for the financial obligations of ownership of the property. Indeed, Parents received benefits as a result of their ownership, including the payment of rent by Sons, as well as "kept all revenues and monies from the [property]." *See Paschall's, Inc.*, 407 S.W.2d at 155. Accordingly, it does not appear that, even if unjust enrichment were applicable, Steven was unjustly enriched through these payments, as Parents undisputedly retained a benefit therefrom.

[15] "'It is well settled that where the real estate can be partitioned in kind among the parties interested, it should not be sold for division but should be partitioned in kind.'" *Jeffers v. Shelton*, 634 S.W.2d 275, 276 (Tenn. Ct. App. 1982) (quoting *Glenn v. Gresham*, 602 S.W.2d 256, 258 (Tenn. App. 1980)). A partition by sale will only be ordered if the following circumstances pursuant to Tennessee Code Annotated section 29-27-201 are met:

## CONCLUSION

In light of the foregoing, the judgment of the Crockett County Chancery Court is reversed, and this cause is remanded for such proceedings as are necessary and consistent with this Opinion, including a determination of whether Steven is entitled to a partition by sale of the McLemoresville farm.  Costs of this appeal are taxed to Appellees, Delmus L. Thomas and Emily Faye Thomas, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

Any person entitled to a partition of premises . . . is equally entitled to have such premises sold for division, in the following cases:

(1) If the premises are so situated that partition thereof cannot be made; or
(2) Where the premises are of such description that it would be manifestly for the advantage of the parties that the same should be sold instead of partitioned.

Tenn. Code Ann. § 29-27-201.  "'If either of the foregoing conditions exist, a sale is justified. Partition in kind is required only where neither condition exists.'" *McKenzie Banking Co. v. Couch*, 332 S.W.3d 349, 351 (Tenn. Ct. App. 2010) (quoting *Glenn*, 602 S.W.2d at 258.  "'The burden of proof is on him who seeks the sale.'" *Jeffers*, 634 S.W.2d at 276 (quoting *Glenn*, 602 S.W.2d at 258).